UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NANCY P.,
  Plaintiff,

v.

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF SOCIAL
SECURITY,
  Defendant.

No. 3:20-cv-01721 (SRU)

# ORDER

Plaintiff Nancy P. appealed the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. On March 7, 2022, U.S. Magistrate Judge Thomas O. Farrish issued a recommended ruling (the "Recommended Ruling"), which recommended that the plaintiff's Motion for Judgment on the Pleadings (doc. no. 19) be denied. Nancy P. timely filed an objection to the Recommended Ruling on March 18, 2022 (doc. no. 28). For the reasons set forth below, Nancy P.'s objection is OVERRULED. The Recommended Ruling is adopted and the Commissioner's Motion to Affirm (doc. no. 25) is GRANTED.

## I. Background

The court assumes the parties' familiarity with the underlying facts. A full statement of the relevant facts can be found in Magistrate Judge Farrish's Recommended Ruling. *See* Recommended Ruling, *Nancy P. v. Kijakazi,* 3:20-cv-01721 (SRU) (Doc. 27).

## II. Standard of Review

"In the face of an objection to a Magistrate Judge's recommended ruling, the [d]istrict [c]ourt makes a *de novo* determination of those portions of the recommended ruling to which an

objection is made." *Smith v. Barnhart*, 406 F. Supp. 2d 209, 212 (D. Conn. 2005); *see also Burden v. Astrue*, 588 F. Supp. 2d 269, 271 (D. Conn. 2008).  The court may adopt, reject, or modify, in whole or in part, the Magistrate Judge's recommended ruling.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's decision is limited.  *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).  It is not the court's function to determine *de novo* whether the claimant was disabled.  *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Rather, the court must review the record to determine first whether the correct legal standard was applied and then whether the record contains substantial evidence to support the decision of the Commissioner.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (ALJ's decision only set aside where it is based on legal error or is not supported by substantial evidence.).

When determining whether the Commissioner's decision is supported by substantial evidence, the court must consider the entire record, examining the evidence from both sides.  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  Substantial evidence need not compel the Commissioner's decision; rather substantial evidence need only be evidence that "a reasonable mind might accept as adequate to support [the] conclusion" being challenged.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (internal quotation marks and citations omitted).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are

supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks and citation omitted).

### III. Discussion

Nancy P. objects to Magistrate Judge Farrish's Recommended Ruling on the ground that it incorrectly held the Administrative Law Judge's ("ALJ") step five findings were supported by substantial evidence.[1] Nancy P. asserts that the ALJ erred in discounting her testimony and disregarding her treating physician's medical opinion. She claims that the ALJ's residual functional capacity assessment ("RFC") is flawed in two respects. Her first, and main, argument is that the ALJ improperly weighed the opinion of her treating physician, Dr. Stephen J. Urciuoli. She claims that the ALJ discounted the opinions of her treating physician because they were in "checkbox" form. *See* Pl.'s Obj., Doc. 28, pp. 2–3. She also claims that the ALJ failed to consider the record as a whole when crafting her RFC. *Id.* I will address those arguments below.

a. Substantial Evidence

Under Second Circuit precedent, an ALJ must follow a two-step procedure in evaluating the medical opinion of a treating physician. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). First, the ALJ determines whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* If both criteria are satisfied, then the opinion is "entitled to controlling weight." *Id.* If not, then the ALJ must consider the *Burgess* factors, which are "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical

---

[1] "At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled." 20 C.F.R. § 404.1520.

3

evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id*., at 95–96; *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). But even if the *Burgess* factors are not expressly and individually considered, the error may be deemed harmless if at least some reasons for discounting the opinion have been clearly stated in the ALJ's decision. *See Estrella*, 925 F.3d at 96.

      The medical opinions in question are (1) a handwritten note dated June 25, 2010 in which Dr. Urciuoli stated that "[Nancy P.] [was] disabled from doing any type of work for at least a year" (R. at 327); (2) an RFC assessment dated September 17, 2010 in which Dr. Urciuoli rendered a diagnosis of low back pain, diabetes, hypertension, and morbid obesity, but provided no supportive test results for the low back pain (R. at 350); (3) a multiple impairment questionnaire dated November 25, 2010 in which Dr. Urciuoli described the level of Nancy P.'s low back pain as a 9 out of 10, and her level of fatigue as a 10 out of 10 (R. at 424); (4) a letter dated November 22, 2011 in which Dr. Urciuoli opined, *inter alia*, that Nancy P. could not sit for more than an hour or stand or walk for more than an hour, and she had limited use of her upper extremities (R. at 436−37); (5) a checkbox RFC questionnaire dated February 27, 2014 in which Dr. Urciuoli indicated that Nancy P. had marked functional restrictions in almost every area but provided no detailed support or information for those conclusions or the manner in which they were reached (R. at 1511); (6) a disability impairment questionnaire dated February 1, 2016 in which Dr. Urciuoli diagnosed Nancy P. with "major depression" and opined that in an eight-hour workday, she could not sit or stand for more than one hour a day (R. at 1346, 48); and finally, (7) a letter dated May 10, 2016 in which Dr. Urciuoli opined that Nancy P. met the disability criteria for chronic kidney disease (R. at 1397). *See* ALJ Dec., Doc. 13, R. at 543–44. In all but one of

4

the documents, the letter dated May 10, 2016, the ALJ gave little to no weight to Dr. Urciuoli's opinions.

Nancy P. points to several sections of the medical record that document the following conditions: (1) elevated blood sugar readings; (2) elevated blood pressure readings; (3) elevated creatinine levels; (4) back pain; (5) obesity; (6) blurred vision; (7) fatigue; and (8) shortness of breath. *Id.*, at 2. She offers those records as evidence that Dr. Urciuoli's opinions about her limitations were well supported and entitled to controlling weight. *Id.* Ironically, the ALJ declined to assign controlling weight to Dr. Urciuoli's opinions based on many of those very same treatment records. *See* ALJ's Dec., Doc. 13, pp. 539–44. But even if some evidence supports Nancy P.'s position, the evidence is not so substantial that no reasonable factfinder would reach a different conclusion. *See Brault v. Soc. Sec. Admin., Com'r,* 683 F.3d 443, 448 (2d Cir. 2012); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B. v. Colvin,* 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision.").

No one disputes that Nancy P. suffered from the various conditions that she lists in her objection. On the contrary, the ALJ recognized that Nancy P. suffered from the following impairments: diabetes mellitus, obesity, chronic kidney disease, and peripheral neuropathy. ALJ Dec., Doc. 13, R. at 539. The ALJ also considered other medical impairments, including anxiety, depressive disorders, hypertension, hyperlipidemia, high cholesterol, leg pain, and low back and flank pain. *Id.*, R. at 540. The question is whether the ALJ's determination that she retained the residual functional capacity to perform sedentary work, despite those impairments,

5

was supported by substantial evidence. I hold that it was. The ALJ cited to substantial evidence in the record to support his RFC finding, and that finding was not contradicted by the evidence offered by Nancy P. [2] Moreover, Nancy P. did not cite to anything specific in the records that the ALJ overlooked or otherwise failed to address. Finally, the pages of the record identified by Nancy P. did not reasonably call into question the ALJ's RFC determination nor did they demonstrate that the ALJ's decision lacked substantial evidentiary support. For example, Nancy P. cited to several pages of medical records that documented her elevated blood sugar levels and high blood pressure; those same records also documented otherwise normal physical exams, as well as a pattern of improvement when compliant with medications and relapse when noncompliant, as noted in the ALJ's decision. Pl.'s Obj., Doc. 28, p. 3; ALJ Dec., Doc. 13, R. at 542–43. Moreover, Nancy P. did not point to a single medical record that supported the extremely restrictive opinions offered by her treating physician with respect to her ability to sit and stand, as well as the limitations in the use of her upper extremities. It might be that Nancy P. would have weighed the evidence differently than the ALJ did, but nothing in the record indicated that the ALJ failed to consider all of the evidence relevant to the claim.

---

[2] Those records reflect the following: Reports back pain and blurry vision. R. at 333; "not checking sugars" R. at 340; "feels well" "low back pain," otherwise normal physical exam. R. at 342; "At the present time, the patient is asymptomatic. On exam, she looks well." R. at 364; "no change from 11/23/10" R. at 408; "mild intermittent abdominal pain; no change in vision." R. at 453; "feels fine, only [complaint of] chronic back pain" R. at 1332; "been well. No complaints." R. at 1359; "otherwise all well controlled on current meds w/o side effects" R. at 1365; "normal findings" R. at 1439; normal blood pressure, R. at 1445; "General overall feeling well since hospital discharge." "non [compliance] w/insulin." R. at 1448; "Been well." "[Complains of] pain [left] rib." "No recent examination by an ophthalmologist." R. at 1451; "Diabetes not well controlled. Not following a diabetic diet faithfully." R. at 1617; "[Diabetes], [hypertension], obesity all poorly controlled due to [non-compliance]. R. at 1624; "longstanding uncontrolled diabetes due to noncompliance." R. at 1298; High blood pressure and overweight but otherwise normal physical exams, and normal mood and affect, "no distress." R. at 1361; 1373; 1449; 1452; 1455; 1459; Flank pain and high blood pressure, otherwise normal physical exam. R. at 1523; Musculoskeletal exam showed full range of motion. R. at 1557; "longstanding uncontrolled diabetes due to noncompliance" R. at 1298; "Feeling fine since last visit and no new symptoms." R. at 1461; diabetes uncontrolled "but does not monitor . . . glucose" forgets to take medication. R. at 1438; hypertension and hyperlipidemia controlled with medication. R. at 1453; high blood pressure, flat affect. R. at 334; normal physical exam, "no psychological symptoms." R. at 1335; no distress, normal affect and thought content, normal range of motion. R. at 1361; hypertension, diabetes, hyperlipidemia and major depressive disorder, R. at 1367.

b. *Burgess* Factors

In determining the appropriate weight to assign a treating physician's opinion, an ALJ must first decide whether the opinion is entitled to controlling weight. *Estrella*, 925 F.3d at 95–96. If the ALJ decides the opinion is not entitled to controlling weight, he must "explicitly consider" the "*Burgess* factors," which are: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.*; s*ee also Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129) (citing 20 C.F.R. § 404.1527(c)(2)). "At both steps, the ALJ must 'give good reasons in [his] notice of determination or decision for the weight [he gives the] treating source's [medical] opinion.'" *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)).

Unfortunately, before assigning weight to Dr. Urciuoli's opinions, the ALJ failed to "explicitly consider" the first of the four Burgess factors—"the frequen[cy], length, nature, and extent of [Dr. Urciuoli's] treatment." *Estrella*, 925 F.3d at 95. Instead, the ALJ referenced Dr. Urciuoli's "longitudinal treatment notes" and acknowledged in passing that Dr. Urciuoli was Nancy P.'s treating physician. ALJ Dec., R. at 539, 542–43. But that procedural error alone does not result in an automatic remand of the Commissioner's decision if the ALJ otherwise provided "good reasons" for his weight assessments. *Meyer v. Commissioner of Social Security*, 2019 WL 6271721, at **2 (2d Cir. Nov. 25, 2019) ("A reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment."). An ALJ is not obliged to a rote

7

recitation of the *Burgess* factors so long as the record otherwise provides "good reasons" for the weight assigned. *Estrella*, 925 F.3d at 96.

After assigning less than controlling weight to Dr. Urciuoli's opinions, the ALJ properly applied the *Burgess* factors. First, he considered the amount of medical evidence supporting the opinions. For example, he referenced "[t]reatment notes from May 17, 2010 to May 10, 2016 [that] consistently and [predominantly] demonstrated entirely normal findings during the comprehensive physical examinations, including normal deep tendon reflexes, gait, and no tremors or sensory deficits." ALJ Dec., R. at 542–43. Then, he compared the consistency of the February 27, 2014 opinion to the medical evidence and found that the "treatment notes [did not] demostrat[e] any upper extremity weakness or strength deficits." ALJ Dec., Doc. 13, R. at 544. He applied the same analysis to the September 2010 RFC assessment, and again, to the November 2010 impairment questionnaire when he determined that "the severity of [Nancy P.'s] chronic low back pain [was] not demonstrated in the records, nor [was the] peripheral neuropathy listed as a diagnosis in the assessment." *Id.* Finally, when assessing Dr. Urciuoli's November 22, 2011 opinion that Nancy P. "would have interruptions in sustaining attention and concentration," he noted that Dr. Urciuoli was not a "mental health specialist and his treatment notes [did] not reflect any finding of limits in attention or concentration." *Id.,* R. at 539. Dr. Urciuoli's determination that Nancy P. was "disabled for at least one year" was not a medical opinion, but rather an administrative finding dispositive of a case and was properly given no weight.[3] *Id.*, R. at 543. Hence, the ALJ's failure to explicitly consider all of the *Burgess* factors was not a fatal error because he "applied the substance of the treating physician rule" in his evaluation of Dr. Urciuoli's opinions. *Halloran*, 362 F.3d at 32.

---

[3] ALJ Kuperstein mistakenly refers to this note as dated July 25, 2010, when, in actuality, it is dated June 25, 2010.

In short, given the medical opinions' inconsistencies with the bulk of the evidence in the record, and the lack of diagnostic tests supporting the level of pain and limitations indicated by Dr. Urciuoli, I hold that substantial evidence supported the ALJ's decision to give some of Dr. Urciuoli's opinions little or no weight.

IV. Credibility

Nancy P. takes issue with the ALJ's analysis that her statements concerning "the intensity, persistence and limiting effects of [her] symptoms were not fully supported from May 17, 2010 to May 10, 2016." ALJ Dec., R. at 542. She contends that the ALJ's credibility analysis was flawed because he placed too much emphasis on: (1) the objective evidence; (2) her activities of daily living; and (3) her history of non-compliance with treatment. Pl.'s Obj., Doc. 28, pp. 6. Yet that is exactly what was required here:

> The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . .If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. *Id*. The ALJ must consider "[s]tatements [the claimant] or others make about [her] impairment(s), [her] restrictions, [her] daily activities, [her] efforts to work, or any other relevant statements [she] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in . . . administrative proceedings." 20 C.F.R. § 404.1512(b)(3); *see also* 20 C.F.R. § 404.1529(a); S.S.R. 96–7p.

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Additionally, the ALJ will consider "what medications, treatments or other methods [the claimant uses] to alleviate [her symptoms], and how the symptoms may affect [her] pattern of daily living [because that] is also an important indicator of the intensity and persistence of [the claimant's] symptoms." 20 C.F.R. § 416.929.

9

The ALJ properly considered both objective and subjective factors when evaluating Nancy P.'s subjective claims of pain: He did not rely on any one factor, but rather considered a number of factors in reaching his conclusion. Nancy P. suggests that the ALJ rejected her subjective statements "solely" based on the available objective medical evidence. Pl.'s Obj., Doc. 28, p. 7. First and foremost, it is axiomatic that an ALJ must consider the objective medical evidence during a credibility determination. *See* 20 C.F.R. § 416.929(c)(2). As such, he was not at liberty to disregard "[t]reatment notes from May 17, 2010 to May 10, 2016 [that] consistently and [predominantly] demonstrated entirely normal findings during the comprehensive physical examinations." ALJ Dec., Doc. 13, R. at 542. Thus, I hold that the ALJ articulated adequate reasons for relying on the objective medical evidence to discredit Nancy P.'s pain testimony, and I defer to the Commissioner's credibility determination. Again, it is important to note that the objective evidence was one of a number of factors the ALJ considered when evaluating Nancy P.'s subjective claims. The ALJ was also permitted to consider daily living activities in his credibility analysis. Nancy P. argues that the ALJ "failed to explain how . . . activities of daily living conflict[ed] with her allegations." Pl.'s Obj., Doc. 28, p. 7. But in evaluating her testimony that "she could only stand or sit for twenty minutes," it was appropriate for the ALJ to consider that she "could perform some cooking, cleaning, and grocery shopping." ALJ Dec., Doc. 13, R. at 542. Not only was it proper for the ALJ to consider Nancy P.'s activities of daily living when evaluating her subjective statements, by law, he was required to do so. *See* 20 C.F.R. § 416.929. Finally, Nancy P. suggests that the ALJ failed to articulate why her non-compliance with treatment was relevant to a determination of disability. Pl.'s Obj., Doc. 28, p. 8. As Nancy P. points out, the ALJ made one reference to her non-compliance with medication and treatment. ALJ Dec., Doc. 13, R. at 542. What is not clear, however, is whether the ALJ drew a

negative inference from Nancy P.'s struggles with treatment compliance.  It does not appear to factor into the analysis other than as background to understanding Nancy P.'s medical history.  It is important to remember that the "[c]redibility findings of an ALJ are entitled to great deference and . . . can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997).  Thus, I cannot conclude that the ALJ's credibility determination was patently unreasonable on the basis of his consideration of the objective medical evidence, and Nancy P.'s activities of daily living and treatment history.  Hence, I hold that there was sufficient evidence to support the ALJ's credibility findings.

### V.     Conclusion

For the foregoing reasons, the Recommended Ruling of March 7, 2022 is APPROVED and ADOPTED. The decision of the Commissioner is AFFIRMED and the case is closed.

So ordered.

Dated at Bridgeport, Connecticut, this 31st day of March 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
